UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CORE-MARK MIDCONTINENT, INC.,   Case No. 1:07-cv-850

    Plaintiff,   Magistrate Judge Timothy S. Black

vs.

DONALD R. BLOOM,

    Defendant.

**MEMORANDUM OPINION UPON TRIAL
WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW
GRANTING JUDGMENT IN FAVOR OF PLAINTIFF**

The Court has previously ruled that Defendant Bloom is liable to Core-Mark for the remaining balance under Ohio Valley's contract with Core-Mark. (*See* Doc. 21). The Court reserved ruling on the amount recoverable by Core-Mark, and an evidentiary hearing was held on December 10, 2008.

At the hearing, Core-Mark presented the testimony of Pam Cooper and Leanne Brasel, and Defendant presented his own testimony, as well as the testimony of Ray Lynch and John Young. (*See* Doc. 29, Hearing Transcript). Documentary exhibits were also admitted into evidence. (*See* Doc. 28, Exhibit List.)

Upon careful review, the Court finds that judgment shall be entered against Defendant Bloom for breach of contract in the amount of $4,534,106, plus pre- and post-judgment interest.

## STATEMENT OF THE CASE

Defendant Bloom is the owner of Ohio Valley AFM, Inc. and its subsidiaries ("Ohio Valley"). Ohio Valley entered into a series of contractual agreements with Core-Mark that obliged Core-Mark to supply Ohio Valley with consumer goods. Core-Mark provides consumer commodities such as groceries and cigarettes and other sundries for gas stations and convenience stores. (Doc. 1.)

Bloom executed a personal guarantee of payment to Core-Mark. (*See* Doc. 17, Ex. 1). However, Ohio Valley continued to fall behind in its payments to Core-Mark. Although Core-Mark has demanded payment from Ohio Valley, Ohio Valley has never satisfied the debt it owes to Core-Mark. (*See* Doc. 17, Ex. 2, Jackson Aff.).

Accordingly, on October 12, 2007, Core-Mark filed the instant action against Defendant Bloom for breach of contract. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. Core-Mark seeks to recover over $5,000,000.00 from Bloom for all past-due receivables owed by Ohio Valley.

On October 14, 2008, the Court entered summary judgment in of Core-Mark and against Donald R. Bloom as to liability. Thereafter, an evidentiary hearing as to damages was held on December 10, 2008.

## FINDINGS OF FACT

Ohio Valley purchased consumer goods such as cigarettes and groceries for sale and distribution to numerous gasoline stations and convenience stores. In the course of doing so, Ohio Valley entered into a series of contractual agreements with Core-Mark that

obliged Core-Mark to supply Ohio Valley with consumer goods. In return for Core-Mark's promise to supply these items, Ohio Valley promised to pay Core-Mark for goods received. Core-Mark would invoice Ohio Valley for all of the goods supplied under the agreement, (Doc. 29, testimony of Leanne Brasel, at 46), and when Ohio Valley made payment, it would pay for all of the invoices sent by Core-Mark under the agreement, irrespective of what corporate entity received delivery. (*Id*. at 50-51.)

Core-Mark and Ohio Valley entered into the relevant agreement in December 2005. (Doc. 28, Exhibit 1.) Pursuant to the agreement, Ohio Valley was the party responsible for paying Core-Mark for all deliveries made under its terms: "Ohio Valley AFM, Inc. shall pay weekly invoices to Coremark." (*Id*. at ¶ 4.) When Ohio Valley became seriously delinquent in its payments to Core-Mark, Core-Mark demanded additional security from Ohio Valley and Bloom. (Doc. 29, Testimony of Pamela Cooper, at 10-13.)

In June 2007, Ohio Valley executed a promissory note (the "Note") in favor of Core- Mark. (Doc. 28, Exhibit 3.) The Note was in the amount of $1,800,000, and Bloom signed it in his capacity as president of Ohio Valley. The $1,800,000 figure covered the entire outside-terms balance owed by all of the Ohio-Valley entities and all of the related entities that Core-Mark supplied under the terms of the agreement.

At the same time as Bloom executed the promissory note on Ohio Valley's behalf, he also executed a personal guarantee of payment (the "Guarantee") to Core-Mark. (Doc. 28, Exhibit 2.) The Guarantee is without conditions. In it, Bloom guaranteed the

payment of all of Ohio Valley's outstanding net accounts payable due to Core-Mark. The Guarantee explicitly and without any precondition allows Core Mark to seek recovery from Bloom for Ohio Valley's continuing indebtedness:

> "The undersigned Guarantor, intending to be legally bound, hereby personally guarantees [Core-Mark] the payment of all outstanding net account payable indebtedness from [Ohio Valley] to [Core-Mark]."

(Doc. 28, Exhibit 2, at 1.)

Moreover, by its terms, the Guarantee remains in effect until Ohio Valley "is within terms for a period of 30 days and provides [Core-Mark] with updated quarterly financials demonstrating positive cash flow and current assets exceeding current liabilities … ." (*Id*.) Thus, Bloom's personal guarantee remains in effect until Ohio Valley "comes into the agreed upon credit terms with Core-mark (sic)", at which point the "guarantee will expire." (*Id*. at 2.)

As of November 5, 2007, that balance was $4,809,106, less the $275,000 still owed in rebates to Ohio-Valley. (Doc. 28, Exhibits 12 & 13; *see also* testimony of Leanne Brasel, at 52-54.)

## CONCLUSIONS OF LAW

*A. Ohio Valley is Liable to Core-Mark for the Entire Unpaid Balance Under the December 2007 Agreement.*

"[A] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." *Garofalo v. Chicago Title Ins. Co.*, 661 N.E.2d 218 (Ohio App. 1995).

Under controlling Ohio law, construction of a written contract is a matter of law that must be determined by the court. *Latina v. Woodpath Development Co.*, 214, 567 N.E.2d 262 (Ohio 1991). To the extent possible, a contract should be construed so as to give effect to the intention of the parties. *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 544 N.E.2d 920 (Ohio 1989). To do so, a court "must give meaning to every paragraph, clause, phrase, and word, omitting nothing as meaningless, or surplusage" and "must consider the subject matter, nature, and purpose of the agreement." *Affiliated FM Insurance Co. v. Owens-Corning Fiberglas Corp.*, 16 F.3d 684, 686 (6th Cir. 1994) (applying Ohio law).

Here, it is undisputed that there was an enforceable contract between Ohio Valley and Core-Mark. It is also undisputed that Ohio Valley failed to live up to its contractual obligations, and Core-Mark suffered damages as a result of Ohio Valley's breach.

Bloom, however, asserts that Ohio Valley is only responsible for a small

percentage of the outstanding balance owed to Core-Mark. Specifically, Bloom maintains that under the corporate of structure of Petro Acquisition, Inc (Ohio Valley's parent company), Ohio Valley is not responsible for payment by certain other entities/franchises related to and/or owned Petro Acquisition. (*See* Doc. 28, Plaintiff's Exhibit 6). Bloom's argument, however, lacks evidentiary support.

As noted by Core Mark, although Bloom introduced testimony and evidence to show that Ohio Valley was part of a much-larger enterprise that included many other separately-incorporated entities, (*see, e.g.*, Exhibit 6), there is absolutely no evidence to suggest that the debt owed to Core-Mark is owed by any entity other than Ohio Valley itself.

Bloom signed a promissory note for the amount of $1,800,000. (*See* Doc. 28, Ex. 3.) Ms. Cooper testified, and as Exhibit 4 demonstrates, the $1,800,000 figure was derived from the entire outstanding past due balance for goods shipped under the agreement. Bloom signed it on behalf of Ohio Valley, and in doing so obliged Ohio Valley to repay the entire $1,800,000 past-due balance pursuant to the terms of the promissory note. He did not modify the amount and limit Ohio Valley's obligation to only those goods shipped to the Ohio Valley family of companies.

Moreover, as noted by Core-Mark, Bloom did not sign a series of promissory notes covering the separate balances that he now alleges were owed by companies other than Ohio Valley. Instead, he acknowledged, on Ohio Valley's behalf, the entire past due balance for all of the companies to which Core-Mark had provided goods under the

-6-

agreement. In doing so, he implicitly acknowledged that it was Ohio Valley who was fully – not partially – responsible to repay the debt owed to Core-Mark.

Additionally, the parties' actions with respect to the rebates owed under the agreement further demonstrate that the entire balance belonged to Ohio Valley. The language in the agreement does not give Core-Mark the right to set off only that portion of the rebate attributable to the Ohio Valley family of companies, nor only for that portion of the balance attributable to the Ohio Valley family of companies. Instead, the agreement gives Core-Mark the right to set off any rebate earned from any shipments under the agreement against the entire balance owed under the agreement. Thus, under the agreement, the parties did not behave as though any company other than Ohio Valley had either obligations or rights under that agreement.

For example, Pam Cooper, a division president at Core-Mark, testified that throughout the history of the account, "Ohio Valley paid [for] all of the franchises that purchased from Core-Mark through Ohio Valley, all of the payments." (Doc. 29, Transcript p. 21; *see* also Doc 28, Exhibits 9, 10, 11).[1]

There was no evidence produced of any contract for the supply of goods other than the contract between Ohio Valley and Core-Mark. There no evidence produced of any invoice that was not sent to Ohio Valley. There was no evidence produced of any invoice

---

[1] Exhibits 9, 10 &11 reflect copies of checks from Ohio Valley to Core-Mark of remittance advices for the individual stores owned by Ohio Valley. Each check lists "Ameristop Food Marts / Ohio Valley AFM, Inc." as the payor and Core-Mark as the payee. Ms. Cooper testified that these exhibits were copies of checks for payment from Ohio Valley for all the stores included in the contract with Core-Mark. (*See* Transcript 49-51). The checks evidence payments by Ohio Valley for stores Bloom alleges were owned by Waco Acquisitions, Inc. and Gillespie Acquisitions, Inc. (*Id.; see also* Doc. 28, Exhibits 9, 10 & 11.)

that was ever paid by any entity other than Ohio Valley. There was no evidence produced to prove, suggest or even imply that any entity other than Ohio Valley ever had any responsibility to make any payment – or ever did make any payment – to Core-Mark. Instead, the only evidence produced proved that Ohio Valley unquestionably acted as the responsible contracting party for a number of other entities when it entered into the agreement with Core- Mark.

**B.     *Bloom is Liable to Core-Mark for All of Ohio-Valley's Unpaid Debt*.**

Because Ohio Valley is liable to Core-Mark for the entire past-due balance owed under the agreement, the personal Guarantee renders Bloom liable to Core-Mark for the same amount.

In Ohio, a guarantee is "an undertaking by one person to be answerable for the payment of some debt, or the due performance of some contract or duty, by another person who himself remains liable to pay or perform the same." *Galloway v. Barnesville Loan*, 57 N.E.2d 337, 339 (Ohio App. 1943) (quoting 29 Ohio Jurisprudence § 308 at 1063). Ultimately, a guarantee is a contract, and the guarantor is bound by the express terms of the contract. *See Morgan v. Boyer*, 39 Ohio St. 324 (Ohio 1883).

As with any other contract, the language used in the guarantee must be understood in its plain and ordinary sense. *Id*. These basic principles of a guarantee are present here.

The Ohio Court of Appeals has held that a guarantee that included an absolute and unconditional promise to pay another's debts was unambiguous and enforceable. *Barclays American/ Commercial, Inc. v. ROYP Marketing Group, Inc*., 573 N.E.2d 1115 (Ohio App. 1988).

Here, Core-Mark is entitled to recover from Bloom under his personal guarantee. The Guarantee could not be more specific: "the undersigned Guarantor (Bloom), intending to be legally bound, hereby personally guarantees [Core-Mark] the payment of all outstanding net account payable indebtedness from [Ohio Valley] to [Core-Mark]." (Exhibit 2, at 1.) Under well-settled Ohio law, Bloom's guarantee is enforceable in these circumstances. *See, e.g., Barclays American/ Commercial, Inc. v. ROYP Marketing Group, Inc*., 573 N.E.2d 1115 (Ohio App. 1988). The only condition precedent to exercise of the guarantee – Ohio Valley's failure to pay Core-Mark – has taken place. Bloom is therefore personally liable to Core-Mark for Ohio Valley's debt.

## CONCLUSION

Upon careful review, the Court finds, under the facts and law as detailed *supra*, that Plaintiff has proven that Defendant Bloom has failed to perform the contractual obligations under the agreement with Core-Mark and is personally liable for Ohio Valley's outstanding debt. Accordingly, judgment shall be entered against Defendant Bloom and for Core-Mark in the amount of $4,534,106, plus pre-judgment and post-judgment interest at the statutory rate of 10% from June 13, 2007 until paid.

Wherefore, pursuant to Civil Rule 58, the Court, by separate entry, shall forthwith enter such judgment.

**IT IS SO ORDERED.**

Date: May 19, 2009                             s/Timothy S. Black
                                               Timothy S. Black
                                               United States Magistrate Judge